IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) CIVIL NO. 3:21-cv-293 |
| APPROXIMATELY $383,590 IN UNITED STATES CURRENCY SEIZED FROM JOHNATHAN REED MOZEAK ON NOVEMBER 30, 2020 IN YUKON, OKLAHOMA | ) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

NOW COMES Plaintiff the United States of America, by and through William T. Stetzer, Acting United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and alleges as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. This is a civil action *in rem* against approximately $383,590.00 in United States currency seized from Johnathan Reed Mozeak ("Mozeak") on November 30, 2020 in Yukon, OK (the "Currency").

2. An Oklahoma Highway Patrol officer pulled over Mozeak and his travel companion, Tina Davis, for speeding in Oklahoma while traveling on I-40 from North Carolina to California. After the officer smelled the odor of marijuana from the vehicle and a drug detection canine positively alerted to the vehicle, a search revealed the Currency packaged in rubber-banded stacks inside plastic zip-lock bags within two backpacks.

3. Many aspects of Mozeak and Davis's initial stories to law enforcement

1

regarding their travel and transportation of the Currency made little sense on their face:

- When initially asked, Mozeak denied that there were any large amounts of currency in the vehicle. However, when law enforcement discovered the Currency, Mozeak claimed that it was the proceeds of a nightclub sale;

- Despite purportedly owning and carrying around nearly $400,000 in cash, Mozeak admitted that Tina Davis rented the vehicle because his credit card was maxed out;

- Mozeak claimed he was traveling to visit an old military friend, but admitted the friend did not know Mozeak was on his way to visit him in California;

- Davis and Mozeak also claimed that they were also traveling to Los Angeles to look at houses for Mozeak to purchase and that Davis was a real estate agent. However, based on North Carolina and South Carolina employment records, Mozeak has not generated any legitimate income since 2017. Further, Davis is not licensed as a real estate agent in California, and Davis and Mozeak admitted they had not scheduled any appointments to view homes;

- Davis and Mozeak rented a one way rental and drove across the country to California, despite the fact that Davis admitted she could only stay one full day in Los Angeles and Mozeak claimed they intended to fly back after 2-3 days because of his hemorrhoids.

4. A simpler—and likely more accurate—explanation for the source of the Currency and their travel exists: Davis and Mozeak were traveling to California as couriers of drug money, and were driving there with a one-way car rental and then flying back to avoid having to take the Currency through airport security screening (where it would likely be detected) on the initial trip before it was delivered.

5. Indeed, a recently arrested large-scale dealer of cocaine and fentanyl in the Charlotte area has admitted that the purpose of Mozeak and Davis's trip was

2
Case 3:21-cv-00293-RJC-DCK   Document 1   Filed 06/18/21   Page 2 of 12

exactly that—to courier the Currency to his supplier in California to pay his drug debt—as Tina Davis and Mozeak had together done for him in the past.

6. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

7. Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 21 U.S.C. § 881; 18 U.S.C. §§ 981, 983, and 984; and the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

9. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred within the Western District of North Carolina.

10. The Currency has been seized and deposited into an account established to hold seized funds.

11. Based on the following facts, verified by Drug Enforcement

Administration ("DEA") Special Agent Warren T. Adamson, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The traffic stop and seizure of the Currency*

12. At roughly 2:40 am on November 30, 2020, Oklahoma Highway Patrol Trooper J. Taylor ("TRP Taylor"), initiated a traffic stop of a black GMC Yukon, bearing NC tag HKH4204 traveling westbound on I-40 at Garth Brooks Boulevard in Yukon, Oklahoma. TRP Taylor initiated the stop after he had followed the vehicle and observed it speeding in two different zones.

13. The vehicle was occupied by Mozeak in the driver's seat and Tina Davis in the passenger seat. TRP Taylor explained to Mozeak the reason for the stop, who indicated that he understood.

14. TRP Taylor asked to see Mozeak's driver's license and Mozeak gave him his South Carolina license. TRP Taylor then requested Mozeak come back to his patrol car while he conducted his law enforcement checks, which Mozeak did.

15. When asked what brought him to Oklahoma, Mozeak responded that he was "headed to California to visit a military buddy." Mozeak further stated that he was a "bail bondsman" and when asked about his trip to California, Mozeak responded that he was heading to Los Angeles, was planning to stay 2-3 days, and was going to stay in a hotel.

16. TRP Taylor approached the passenger-side of the Yukon and asked Davis for the rental agreement. When Davis was asked where she and Mozeak were

headed, she responded, "we are on a mission to Arizona."

17. While talking with Davis, TRP Taylor smelled the odor of raw marijuana coming from inside the vehicle. Further, while viewing the rental agreement, TRP Taylor observed that it was a one-way rental from Charlotte, NC to Los Angeles, CA (a known drug source location).

18. It is common for individuals involved in drug trafficking to rent vehicles one-way because the drugs or currency that they are transporting cannot be easily transported on a plane without being noticed by airport security screening.

19. Returning to the patrol car, TRP Taylor asked Mozeak, *inter alia*, about the one-way rental, and Mozeak responded that they were going to fly home because of his hemorrhoids.

20. TRP Taylor asked Mozeak if there was any marijuana or large amounts of currency in the vehicle. Mozeak responded "no" and "I don't" respectively.

21. At this time, OCPD Sergeant D. Evans deployed K-9 Logan, a properly trained and certified drug detection canine, in an open air sniff of Mozeak's vehicle.

22. K9 Logan positively alerted to the presence of narcotics from the vehicle.

23. A probable cause search of Mozeak's vehicle revealed two black backpacks with large amounts of U.S. Currency:


24. The seized currency was later determined to total $383,590, with approximately 14,124 in twenty-dollar bills.

25. The Currency's packaging, denominations, and transportation are consistent with cash involved in drug trafficking.

26. Due to the large amount of currency, TRP Taylor called the DEA Task Force Officer on duty, Cameron Ware ("TFO Ware") and advised of seizure of the Currency.

27. The Currency was seized and transported to the OHP Special Operations office. Mozeak and Davis were also transported there where TFO Ware met them for interviews. Each was given *Miranda* warnings and agreed to speak with TFO Ware.

### *The purported purpose of Mozeak and Davis's trip*

28. Mozeak claimed he and Tina Davis were traveling to California to visit an old military friend, Damien Savvoy, who had COVID-19 and lived in San Bernadino County, California.

29. Notably, Mozeak admitted that Savvoy did not know that Mozeak was on his way to visit Savvoy in California.

30. Mozeak also claimed that he was travelling to California to look for a house with the assistance of Tina Davis, who is a licensed real estate agent in North Carolina, and that he took $400,000 in cash with him to use to purchase a home if he found one he liked.

31. Mozeak stated that Davis rented the Yukon for him because his credit card was maxed out.

32. Tina Davis similarly stated that Mozeak asked her to ride with him to Los Angeles to visit friends and look for properties for sale. She claimed she is a real estate agent, but admitted she was not licensed to practice in the state of California. Rather, according to her, she planned to put Mozeak in contact with a real estate agent in California, in the hopes of receiving a referral fee for a completed sale. Tina Davis admitted they did not have any viewing appointments scheduled but claimed instead that they were going to drive by homes they saw online.

33. TFO Ware asked Davis how long they were planning to stay in California. She responded that they were planning to leave and head back to California after one full day, since she had to be back at work by a certain day.

34. Davis claimed that she had no prior knowledge of the large sums of currency in the vehicle.

*The purported source of the Currency*

35. When TFO Ware asked Mozeak about the currency located in the

vehicle, Mozeak responded that he received the money from selling a nightclub named "Scorpio's" in Charlotte, North Carolina. Mozeak stated that he bought the nightclub approximately a year and a half ago from two men named Michael and David for $1.5 million plus approximately $30,000 in start-up expenses.

36. Mozeak stated he sold the club in mid-November 2020, after deciding that he did not want to deal with operating the club any longer, for $1.5 million to a company he believes was called "Freedom Discoveries" with an office on Mint Street in Charlotte, NC.[1]

37. TFO Ware asked Mozeak why he didn't deposit the Currency at a bank rather than transport the cash to purchase a home in California should he find one he liked. Mozeak responded, "Money talks, BS walks."

38. Mozeak admitted he did not ever deposit the Currency in a bank account after it was in his possession.

### *Mozeak's history of traffic stops with large sums of currency and lack of legitimate employment records*

39. TFO Ware asked Mozeak if he had previously been stopped by law enforcement while possessing large sums of currency, and Mozeak admitted that he had on at least five other occasions:

- One stop in Los Angeles, CA, approximately two years ago with

---

[1] TFO Ware conducted a google search for "Scorpio's" and located "The Scorpio" in Charlotte, which is believed to be the club Mozeak was referring to in his interview. Mozeak submitted supporting documents related to this sale to the USAO prior to the filing of this suit; however, contrary to his initial story, these documents reflect that another entity, not Mozeak, sold the property. And, while Mozeak purports to have derived money from that sale, given the totality of the circumstances—and the clear admissions regarding the Currency's source and intended use detailed below—Mozeak's assertion that *the Currency at issue*—even assuming *arguendo* Mozeak at some point in time profited from a nightclub sale—was clean money owned and being transported by Mozeak due to a nightclub sale is not credible.

    approximately $50,000 - $100,000;

- A stop in Charlotte with approximately $500,000;

- A stop in Virginia with approximately $75,000;

- A stop in Atlanta, Georgia with approximately $200,000; and

- A stop in Columbia, South Carolina with approximately $125,000.

  40. Mozeak claimed that he worked as security for a large number of rappers and he was carrying the above-referenced large sums of currency which belonged to the rappers. Mozeak claimed he was always asked to carry the rappers' money since he was a large, imposing male and it was believed the money would be safe with him.

  41. Based on a review of employment records in the states of North Carolina and South Carolina, Mozeak appears to have not held a legitimate source of income since 2017. Specifically, Mozeak's last reported income was in the state of North Carolina in the fourth quarter of 2017 for approximately $4,500.00 from a company named XPO Logistics Freight, Inc.

***The Currency's admitted connection to and intended use in drug trafficking***

  42. Gary Lee Davis was a large-scale distributor of fentanyl and cocaine who, prior to his recent arrest, operated in the Charlotte area.

  43. Gary Davis was federally criminally indicted on six counts: one count of conspiracy to distribute and possess with intent to distribute cocaine and fentanyl, one count of distribution and possession with intent to distribute fentanyl, one count of possession with intent to distribute cocaine and fentanyl, and two counts of possession of a firearm by a felon. *See* Doc. 7, WDNC Case No. 3:21-cr-00031.

44. Further, in conjunction with its investigation of Gary Davis, law enforcement has seized a significant amount of assets and currency alleged to be involved in or the proceeds of Davis's drug trafficking, including large sums of currency.

45. Gary Davis's supply source for drugs was located in California, and Gary Davis has admitted to law enforcement that Mozeak and Tina Davis (no known relation) were transporting the Currency at issue in this suit to Gary Davis's source of supply as payment for a drug debt.

46. Gary Davis has further admitted to law enforcement that he had previously used Mozeak and Tina Davis as couriers to transport payment to his supplier in California.

### FIRST CLAIM FOR RELIEF – THE $383,590.00 IN CURRENCY
### (21 U.S.C. § 881(a)(6))

47. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 46 above as if fully set forth herein.

48. The $383,590.00 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

49. Upon information and belief, the following persons and/or entities may claim an interest in the Currency seized on November 30, 2020:

- Johnathan Reed Mozeak;

- Tina Davis; and

- Gary Lee Davis

## CONCLUSION

50. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Currency vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 18th day of June, 2021.

    WILLIAM T. STETZER
    ACTING UNITED STATES ATTORNEY

    /s/ Seth Johnson
    J. Seth Johnson
    NC Bar No. 53217
    Assistant United States Attorney
    Suite 1650, Carillon Building
    227 West Trade Street
    Charlotte, North Carolina 28202
    Telephone: (704) 338-3159
    Email: seth.johnson@usdoj.gov

## **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the ____ day of June, 2021.

_____
*Warren T. Adamson*
Warren T. Adamson, Special Agent
Drug Enforcement Administration